UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| **EMMANUEL BARNES,** )<br> )<br>   **Plaintiff,** )<br> )<br>   v. )<br> )<br>**GENERAL MOTORS CO.,** )<br> )<br>   **Defendant.** ) | Civil Action No. 4:20-cv-87 |

**COMPLAINT WITH JURY DEMAND**

Plaintiff, by counsel, for his Complaint against General Motors Co., states as follows:

**JURISDICTION AND VENUE**

1. This suit is brought under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12113, as amended by the ADA Amendments Act (ADAAA) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et. seq.* This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), 29 U.S.C. § 626, and 42 U.S.C. § 12117(a).

2. All acts alleged herein were committed within the Southern District of Indiana and venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff Emmanuel Barnes ("Barnes") was born in 1956. He is a citizen of the United States and at all relevant times has been a resident of Lawrence County, Indiana.

1

4. Defendant General Motors Co. ("GM") is a corporation which operates a facility known as GM Power Train and/or Bedford Castings Operations in Bedford, Indiana where it manufactures engine blocks and cylinder heads for certain GM vehicles.

5. GM is an "employer" within the meaning of the ADA and the ADEA.

6. At all relevant times, Barnes was an "employee" of General Motors Co. within the meaning of the ADA and the ADEA. More specifically, Barnes was employed by GM at its Bedford Casting Operations for forty-one (41) years, from December, 1978 until his termination in September, 2019.

## PLAINTIFF BARNES' EMPLOYMENT WITH GM

7. Barnes was first employed by GM beginning in December, 1978 as an alloy technician in the metal melting process. Throughout his employment, Barnes was represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Local Union 440. As a bargaining unit employee, Barnes was covered by the collective bargaining agreement between GM and the UAW and entitled to use his seniority to claim jobs for which he was qualified and shifts which he preferred.

8. In or around 2004, Barnes was injured on the job. As a result of this injury, he sustained a disability which resulted in the imposition of a permanent work restriction in 2005 precluding him from operating motorized vehicles, a category of vehicles which includes forklifts.

9. Notwithstanding his disability and work restriction, Barnes continued to work at the Bedford facility, and his job performance met or exceeded reasonable expectations of his employer.

10. In 2019, Barnes had been working for approximately eight 8 ½ years in the Bedford facility's parts department as a receiver/checker, a position also known as crib attendant. His job

responsibilities included ordering parts, parts distribution, the issuing of parts, inventory auditing and related tasks.

11. In 2019, Barnes worked as a crib attendant on the third shift, and his work schedule included extensive overtime, both daily overtime during the week as well as weekend overtime. For the 8 ½ years that he had held the position of crib attendant prior to the spring of 2019, Barnes performed the job in accordance with his permanent work restriction and did not operate motorized vehicles, and his work performance met or exceeded GM's reasonable expectations.

12. In or around April, 2019, Barnes's supervisor, without any request from Barnes, directed him to go to plant medical. After the visit, Barnes was not permitted to return to his job as crib attendant because of his medical restriction. He was placed on a 30 day medical leave which was then followed by a 90 day medical leave. The imposed medical leave caused serious economic injury to Barnes as the sick leave benefits he received were substantially less than his wages as a crib attendant.

13. Barnes filed grievances protesting GM's refusal to permit him to return to work and alleged that GM was discriminating against him because of his medical restrictions.

14. Barnes also contacted the Equal Employment Opportunity Commission in August or early September, 2019 and lodged a complaint of age and disability discrimination against GM.

15. Throughout this period, Barnes was able to perform the duties of a crib attendant as well as other positions for which he was qualified and to which he was entitled by virtue of his seniority with or without reasonable accommodation.

16. GM's removal of Barnes from the position of crib attendant which he had satisfactorily performed for approximately 8 ½ years, its placing him on sick leave, a status in which he suffered a substantial economic loss, and its refusal to permit him to return to a position

to which he was entitled based on seniority and qualifications were discriminatorily undertaken and designed to force Barnes to retire.

17. GM's unfair treatment of Barnes was motivated by discrimination on the basis of disability and/or age and in retaliation for his complaints of discrimination.

18. In September, GM assigned Barnes to the Die Cast department and directed him to report to work in that department. Barnes objected to the assignment and submitted a request for vacation which he had earned and to which he was entitled. GM ignored Barnes' request for vacation and terminated him on September 13, 2019.

## ADMINISTRATIVE PROCEDURES

19. In or about August or early September, 2019 Barnes was in communication with representatives of the Equal Employment Opportunity Commission complaining of discrimination by GM, and on September 6, 2019, Barnes submitted a written complaint of discrimination to the EEOC. With the assistance of EEOC personnel, the complaint was transformed into a formal EEOC charge which was filed on or about October 25, 2019.

20. On February 11, 2020, the EEOC issued Barnes a Notice of Right to Sue.

21. Barnes has ninety (90) days from his receipt of the Notice of Right to Sue to file a Complaint which time has not passed.

## COUNT I – DISABILITY DISCRIMINATION

22. All preceding paragraphs of this Complaint are incorporated herein by this reference.

23. Barnes is a qualified individual with a disability under the ADA as amended by the ADAAA.

24. Barnes has a record of a disability and was regarded as having a disability by GM within the meaning of the ADA as amended by the ADAAA.

25. During the course of his employment with GM, Barnes was an "employee" of GM within the meaning of the ADA, 42 U.S.C. § 12111(4), as amended by the ADAAA.

26. GM employs approximately 500 employees at the Bedford facility and is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), as amended by the ADAAA.

27. GM engaged in unlawful discrimination in violation of the ADA, as amended by the ADAAA, when it refused to permit Barnes to continue working in the position of crib attendant that he had satisfactorily performed for approximately 8½ years and which he could have continued to perform with or without a reasonable accommodation.

28. GM further engaged in unlawful discrimination in violation of the ADA, as amended by the ADAAA, when it terminated Barnes because of his disability, record of disability, and perceived disability.

29. GM engaged in discriminatory treatment of Barnes on the basis of disability and acted with malice or reckless disregard with respect to Barnes' rights as an individual with a disability in violation of the ADA, as amended by the ADAAA.

## COUNT II – WILLFUL AGE DISCRIMINATION

30. All preceding paragraphs of this Complaint are incorporated herein by this reference.

31. Over the course of his employment with GM, Barnes met GM's reasonable expectations.

32. Nevertheless, between April and September, 2019, GM denied Barnes the employment opportunity of full time work in a position to which he was entitled, and it terminated

5

him on September 13, 2019. GM did not subject younger employees to this type of unfair and discriminatory conduct and subjected Barnes to disparate treatment based on his age.

33. At the time of his termination, Barnes was 63-years old.

34. During the course of his employment with GM, Barnes was an "employee" within the meaning of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 630(f).

35. GM employs approximately 500 employees at its Bedford facility and is an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

36. GM engaged in unlawful discrimination in violation of the ADEA when it subjected him to disparate treatment, denied him equal employment opportunities and terminated him on account of his age.

37. GM has willfully and intentionally engaged in discriminatory treatment of Barnes on the basis of age and has acted with malice or reckless disregard of Barnes' rights as an employee protected by the ADEA.

## COUNT III – RETALIATION

38. All preceding paragraphs of this Complaint are incorporated herein by this reference.

39. Barnes opposed conduct which he reasonably believed to be discriminatory by insisting that GM should permit him to continue working as a crib attendant with the accommodation of not being required to operate motorized vehicles.

40. Barnes opposed conduct which he reasonably believed to be discriminatory by protesting GM's age and disability discrimination through the grievance procedure in the collective bargaining agreement between GM and the UAW.

41. Barnes contacted the Equal Employment Opportunity Commission in early August or early September, 2019, prior to his discharge, and complained that GM was discriminating against him on the basis of his age and his disability.

42. GM engaged in unlawful retaliation against Barnes by denying him equal employment opportunities and then terminating him for his opposition to conduct which he reasonably believed to be discriminatory and/or for his participation in the process afforded by the Equal Employment Opportunity Commission to remedy unlawful discrimination.

43. GM has willfully and intentionally engaged in unlawful retaliation against Barnes and has acted with malice or reckless disregard of Barnes' rights as an employee by denying him equal employment opportunities and then terminating him because he opposed GM's refusal to provide him with a reasonable accommodation, because he filed grievances opposing GM's discriminatory conduct and/or because he sought the assistance of the EEOC by communicating with EEOC representatives and filing a complaint of age and disability discrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Barnes prays for the judgment of this Court against Defendant GM providing the following relief:

A. An order directing the Defendant to reinstate the Plaintiff.

B. A permanent injunction enjoining GM, its officers, agents, servants, employees, attorneys, and all persons in active concert or participating with it, from discriminating or retaliating against employees because of their disability or age or their opposition to discriminatory conduct or participation in processes of the Equal Employment Opportunity Commission.

C. An award of back pay with prejudgment interest for the wages and other employment benefits and opportunities that the Plaintiff has lost as a result of the forced medical leave to which he was subjected and his subsequent termination from employment with GM.

D. Compensatory damages in an amount to be determined by a jury to compensate Plaintiff for the emotional distress, mental anguish and other non-pecuniary losses that he has suffered because of Defendant's discriminatory and retaliatory conduct.

E. Punitive damages in an amount to be determined by a jury to deter Defendant and other employers from engaging in discriminatory and retaliatory conduct in the future.

F. Liquidated damages in an amount equal to Plaintiff's lost earnings and benefits because of Defendant's willful violation of the ADEA.

G. In the event the Court determines that it would be inappropriate to direct the reinstatement of the Plaintiff as an employee of the Defendant, an award of front pay and damages to compensate the Plaintiff for the losses that he reasonably will sustain as the result of being denied continued employment with the Defendant.

H. An award of reasonable attorneys' fees and costs.

I. Such further relief as the Court deems necessary and proper in the public interest.

Respectfully submitted,

MACEY SWANSON LLP
/s/ Jeffrey Macey_____
Jeffrey A. Macey, Atty No. 28378-49
Barry A. Macey, Atty No. 8964-49
MACEY SWANSON LLP
445 N. Pennsylvania Street, Suite 401
Indianapolis, IN 46204
Phone: (317) 637-2345
Facsimile: (317) 637-2369
jmacey@maceylaw.com
bmacey@maceylaw.com

## JURY DEMAND

Plaintiff, by counsel, requests that this cause be tried to a jury on all issues so triable.


                                                _s/Jeffrey A. Macey_____
                                                Jeffrey A. Macey, Atty No. 28378-49
                                                Barry A. Macey, Atty No. 8964-49
                                                Attorneys for Plaintiff