**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| EMMANUEL BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00087-TWP-KMB |
| | ) |
| GENERAL MOTORS LLC | ) |
| f/k/a GENERAL MOTORS CO., | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON DEFENDANT'S MOTIONS *IN LIMINE*

This matter is before the Court on Defendant General Motors LLC's ("GM") Motions *in Limine* ([Filing No. 82](#)). Plaintiff Emmanuel Barnes ("Barnes") initiated this lawsuit asserting claims for disability discrimination, age discrimination, and retaliation after being terminated from GM. Following a motion for summary judgment, only Barnes' disability discrimination claim remains for trial, which is scheduled to begin on June 5, 2023. GM seeks preliminary rulings from the Court regarding the admissibility of certain evidence and arguments. For the following reasons, GM's Motion *in Limine* is **granted in part and denied in part**.

### I.     LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion *in limine* does not necessarily mean that all evidence

contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401. "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct. A motion in *limine* weeds out evidence that is not admissible for any purpose." *Washington Frontier League Baseball, LLC v. Zimmerman*, No. 14-cv-1862, 2018 WL 3120623, at *2 (S.D. Ind. June 26, 2018).

## II.   DISCUSSION

GM requests that the Court preclude eleven categories of evidence from trial. The Court will address each Motion in turn.

### 1.   Filing of or Rulings on Dispositive Motions and Motions in *Limine*

GM first seeks preclusion of evidence or references to pretrial motions, including motions for summary judgment and motions in *limine*, in the presence of the jury (Filing No. 83 at 1). GM's request to preclude evidence of pretrial rulings by the Court is well-founded, and Barnes does not object, so the Motion is **granted**.

### 2.   Barnes' Dismissed Claims

GM next asks the Court to preclude evidence or testimony regarding the merits of the dismissed age discrimination and retaliation claims, which were dismissed in the summary judgment order. GM argues that evidence concerning the dismissed claims is irrelevant to Barnes' remaining disability discrimination claim and would unfairly prejudice GM. Barnes responds that GM's request is too broad because it would exclude evidence that is probative of his remaining claim. (Filing No. 93 at 2.) For example, evidence that Barnes was denied a reasonable accommodation and terminated after seeking one could be evidence of both Barnes' disability discrimination claim and retaliation claim. *Id.*

The Court addressed similar requests *in limine* in *Brooks v. City of Carmel*, No. 18-cv-613, 2020 WL 6710794 (S.D. Ind. Nov. 16, 2020) and *Coyle Nissan, LLC v. Nissan North Am., Inc.*, No. 18-cv-75, 2022 WL 2805385 (S.D. Ind. Feb. 2, 2022). In both cases, some claims were dismissed through dispositive motions practice, and the parties moved to preclude evidence concerning the dismissed claims. And in both cases, the Court precluded evidence or argument that the claims had been asserted and dismissed but, for the reason identified by Barnes, declined to preclude all evidence "regarding the incidents surrounding the dismissed claims." *Brooks*, 2020 WL 6710794, at *3; *Coyle Nissan*, 2022 WL 2805385, at *3 (summarizing non-movant's argument that evidence related to dismissed claims was "relevant to the supplemental claims and provide[s] necessary background information about the parties' relationship, contract, and actions").

This motion *in limine* is **granted in part and denied in part**, similar to the Court's conclusion in *Brooks* and *Coyle Nissan*. It is not relevant, and therefore inadmissible, that age discrimination and retaliation claims were brought in the Second Amended Complaint and then dismissed by the Court. It is likewise irrelevant that Barnes may still contend that he was discriminated against based on this age or retaliated against. The Motion is therefore **granted** to the extent that Barnes may not discuss that the dismissed claims were brought and subsequently dismissed, argue that GM discriminated against him based on his age or retaliated against him, or offer evidence relevant only to his dismissed claims.[1] However, evidence of the incidents

---

[1] Barnes also argues that he may offer evidence relevant to his dismissed claims because Federal Rule of Civil Procedure 54(b) allows him to seek a revision of the Court's summary judgment order prior to entry of a judgment adjudicating any remaining claims. However, Rule 54(b) does not allow Barnes to simply re-offer evidence of his dismissed claims at trial. Rule 54(b) is not an appropriate mechanism "for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996). If new evidence adduced at trial warrants a revision of the Court's summary judgment order, then Barnes may move for such a revision after trial. But at the start, the evidence adduced at trial must be relevant only to Barnes' remaining disability discrimination claim.

surrounding the dismissed claims may be probative of his disability discrimination claim, so the Court declines to preclude that evidence at this time and **denies** that portion of the Motion.

### 3. Sylvia Brown's Testimony Regarding Todd Harhay

While GM's third Motion in *limine* refers to "Evidence That Lacks Relevance or That Would be Unduly Prejudicial," in substance, it specifically seeks to preclude evidence or testimony from Barnes' former supervisor, Sylvia Brown, regarding GM's Indirect Material Operations Manager Todd Harhay (Filing No. 83 at 3). GM argues that "Brown's issues with Harhay stemmed from her own work performance, and her perception that Harhay was demanding and difficult to please" and "has nothing to do with Barnes, who did not directly report to Harhay like Brown did." *Id.* GM therefore contends that Brown's testimony will be irrelevant and would confuse the issues or mislead the jury.

Barnes responds that Brown's testimony is relevant to his disability discrimination claim because it tends to show that GM's stated reasons for its treatment of Barnes is pretextual (Filing No. 93 at 3). Barnes anticipates that Brown will testify that she was instructed to remove Barnes from his crib attendant position, delayed the removal for eight months, and was then disciplined by Harhay for the delay. *Id.* According to Barnes, "[t]his evidence belies GM's contention that it was merely objectively enforcing the essential functions of the crib attendant position without regards to Barnes's disability." *Id.*

Because Barnes has identified a potentially admissible use for the evidence regarding Brown and Harhay, the Court cannot conclude at this pretrial stage that the evidence clearly is not admissible for any purpose. The Court thus determines that this evidentiary ruling must be deferred so questions of foundation, relevancy, and prejudice may be resolved in context. This Motion is **denied**.

### 4. **GM's Alleged Discrimination Against Other Employees**

GM also asks the Court to preclude evidence of GM's alleged disability discrimination against other employees (Filing No. 83 at 3). GM contends that several circuit courts have precluded similar evidence because "only the motives of the decision-makers are relevant in determining whether or not discrimination has occurred." *Id.* at 4. In response, Barnes argues that evidence of alleged discrimination against other employees will speak to the motives of the decision-makers in this case and is thus relevant (Filing No. 93 at 4).

The Seventh Circuit has consistently held that "behavior or comments directed toward other employees in the protected group" constitutes circumstantial evidence of a decision-maker's discriminatory intent. *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720–21 (7th Cir. 2005) (quoting *Troupe v. May Dep't Stores*, 20 F.3d 734, 736 (7th Cir. 1994)). The caselaw cited by GM does not controvert these holdings. Some of the cases cited by GM are distinguishable because they center around testimony offered by employees whose circumstances differed from the plaintiff's and decision-makers who were not involved in the plaintiff's termination. *See Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 443 (7th Cir. 2009) (upholding exclusion of evidence of other acts of discrimination and retaliation by "other supervisory personnel" and not plaintiff's supervisor); *Schrand v. Fed. Pacific Elec. Co.*, 851 F.2d 152 (6th Cir. 1988) (concluding district court erred in admitting testimony from other employees who did not work at the same time or in the same office as the plaintiff, about a manager who was not involved in plaintiff's termination). Most of GM's cases are inapplicable because they involve different evidentiary issues. *McCluney v. Joseph Schlitz Brewing Co.*, 728 F.2d 924, 928–29 (7th Cir. 1984) (finding no clear error in exclusion of evidence offered by male plaintiff in retaliation claim, regarding plaintiff's historic treatment of other female employees offered to show that plaintiff's "past behavior exhibited a character trait for sincere and honest concern for female employees" and that plaintiff "acted in

5

accordance with that trait" when he opposed a transfer policy, leading to his retaliatory termination); *Fortino v. Quasar Co.*, 950 F.2d 389, 395 (7th Cir. 1991) (finding trial judge erroneously admitted evidence of age discrimination against other employee solely because plaintiff failed to timely disclose testimony); *Haskell v. Kaman Corp.*, 743 F.2d 113, 120–21 (2d Cir. 1984) (concluding other employees' testimony was insufficient to establish "pattern or practice" of discrimination and not addressing whether evidence was probative of supervisor's discriminatory motive).

If GM believes specific evidence offered by Barnes is inadmissible, an objection may be raised and the Court will issue a ruling in the context of trial. However, because evidence of alleged disability discrimination against other employees by the decision-makers in this case *may* be admissible as circumstantial evidence of discriminatory intent, the motion *in limine* is **denied**.

**5.     GM's Net Worth or Improper Comparisons Between Parties or Counsel**

Next, GM argues that any evidence regarding its worth and any evidence comparing GM's financial position and/or its legal counsel to Barnes' wealth and/or his counsel, is irrelevant and would serve only to improperly solicit sympathy from a jury (Filing No. 83 at 6).  The Court will discuss evidence of GM's net worth before discussing evidence comparing GM to Barnes.

As to evidence of GM's net worth, GM relies on the Seventh Circuit case *ZAZÚ Designs v. L'Oréal, S.A.*, 979 F.2d 499 (7th Cir. 1992), for the proposition that "a 'corporate defendant's net worth is irrelevant to the assessment of punitive damages against it.'" *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582, 589 (S.D. Ind. 2000) (citing *ZAZÚ Designs*, 979 F.2d at 508–09.  However, *ZAZÚ* did not hold that a defendant's net worth is irrelevant to punitive damages, despite this Court's interpretation of the decision in an earlier opinion.  *Id.*  The *ZAZÚ* court merely criticized the district court in dicta for placing too much weight on the defendant's net worth in calculating punitive damages. *Id.* at 508 ("One million dollars cannot be justified as necessary to either

compensation or deterrence. The judge discussed neither. Instead he calculated the award as a percentage of L'Oréal's (supposed) net worth—as if having a large net worth were the wrong to be deterred! . . . Employing L'Oréal's net worth as the starting point did not help the court identify concealable offenses and may have misled it about the appropriate size of the award.").

As Barnes notes, this Court has since recognized the dicta in *ZAZÚ* is just that—dicta—and has held that net worth is one appropriate consideration in determining punitive damages. *See Ripberger v. Corizon, Inc.*, No. 11-cv-1394, 2012 WL 4340716, at *4 (S.D. Ind. Sept. 20, 2012); *EEOC v. Heart of Cardon, LLC*, 339 F.R.D. 602, 605 (S.D. Ind. 2021). The Seventh Circuit Pattern Civil Jury Instructions also indicates that "evidence of a Defendant's financial condition" may be relevant to punitive damages. The Motion is therefore **denied** as to evidence of GM's net worth.

Barnes does not dispute that evidence of comparisons between GM and Barnes with respect to their financial positions and/or legal counsel is irrelevant, and the Court is unaware of any relevant or admissible purpose for allowing such evidence. The Court further agrees with GM that any such evidence might elicit the jury's sympathy and risk jury nullification. The Motion is therefore **granted** as to evidence comparing GM's financial position and/or legal counsel to Barnes'.

### 6. Emotional Distress Caused by this Litigation

GM moves to preclude evidence of any emotional distress this litigation may have caused Barnes and any suggestion that such distress should be considered by the jury in awarding damages (Filing No. 83 at 6). This Court and the Seventh Circuit have precluded evidence of litigation-induced emotional distress as irrelevant. "It would be strange if stress induced by litigation could be attributed in law to the tortfeasor. An alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages." *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983). Citing the Seventh Circuit's opinion in *Stoleson*, the Fourth Circuit explained,

7

"[g]enerally speaking, litigation-induced emotional distress is never a compensable element of damages." *Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001); *see also Dukes v. United States Postal Serv.*, No. 10-CV-655, 2011 WL 809257, at *2 (E.D.N.Y. Mar. 2, 2011) (citation and quotation marks omitted) ("[A] litigant may not claim emotional and financial distress as a result of a costly litigation. [A] litigant who commences a protracted and expensive lawsuit . . . may not then claim as an element of damages that he suffered emotional and financial anxiety because the lawsuit cost too much.").

In response, Barnes "acknowledges that evidence of stress caused solely by the litigation can be excluded" but argues that "to the extent that other evidence of emotional distress is inextricably intertwined with the distress from the litigation, then it should be allowed" (Filing No. 93 at 5). Barnes does not explain what type of emotional distress evidence might be "inextricably intertwined" with litigation-induced stress, and to the extent Barnes contends he may recover for emotional distress caused by some combination of the alleged discrimination and the present litigation, he is mistaken. Barnes may recover damages for only the emotional distress he proves was caused by the alleged discrimination. *United States v. Balistrieri*, 981 F.2d 916, 933 (7th Cir. 1992) ("A plaintiff must actually prove that he suffers from emotional distress and that *the discrimination caused that distress*." (emphasis added)). Pursuant to clear Seventh Circuit precedent, evidence of litigation-induced emotional distress is not admissible.

GM's Motion is therefore **granted**. Barnes is precluded from offering evidence or argument that the present litigation caused or contributed to his emotional distress, and he is precluded from arguing or suggesting to the jury that any emotional distress caused by this litigation should be factored into the jury's damages determination. If, during trial, Barnes believes that specific evidence regarding emotional distress caused (in whole or in part) by the present

litigation is admissible, then he may request that the Court revisit this ruling at that time, outside of the presence of the jury.

      7.      **Back Pay and Front Pay**

GM also asks the Court to preclude "any reference to, or allegation of, back pay or front pay for Barnes" (Filing No. 83 at 7). Because the Court, and not a jury, determines whether and how much back pay and/or front pay should be awarded to Barnes, evidence of back pay and front pay "has no relevance to the jury and should be excluded under Fed. R. Evid. 402." *Id.* GM also argues that if the jury decides Barnes is successful on the issue of liability, the jury may confuse the issues of back pay and front pay with the issue of damages and erroneously factor Barnes' back or front pay into his damages award. *Id.* at 8. Barnes responds that "[e]vidence of the loss of pay" is necessary to explain certain decisions Barnes made with respect to his employment (Filing No. 93 at 6). "For instance, the Plaintiff did not enter the ADAPT program or accept reassignment because of the dramatic loss of overtime pay." *Id.*

Front and back pay are equitable remedies, and testimony and evidence about any amount purportedly owed should be heard by the Court, not a jury. *See Williams v. Lovchik*, No. 09-CV-1183, 2012 WL 2930773, at *1 (S.D. Ind. July 18, 2012) ("Back pay and front pay are equitable remedies to be decided by the Court, not a jury."). GM's request to that end is **granted**. Barnes is precluded from offering evidence or argument concerning what amounts, if any, he contends he is owed in back pay or front pay. But because evidence about Barnes compensation, including changes to his compensation, may be relevant and admissible for the purposes identified by Barnes, that portion of GM's Motion is **denied**.

      8.      **Punitive Damages**

GM asks the court to preclude "any reference to a claim for punitive damages or evidence supporting such a claim . . . until such a time, if ever, that Barnes proves a *prima facie* case for

punitive damages" (Filing No. 83 at 8). To receive punitive damages for disability discrimination, a plaintiff must show that the defendant acted "with malice or with reckless indifference" toward the plaintiff's rights under federal law. 42 U.S.C. § 1981a(b)(1). In response, Barnes argues that GM's request would effectively prevent him from ever proving his entitlement to punitive damages (Filing No. 93 at 6). GM's request is not as restrictive as Barnes believes it is. GM merely requests that Barnes be required to offer evidence showing that GM acted with "malice or reckless indifference," thus warranting punitive damages, before offering evidence regarding what amount of punitive damages the jury should award.

The Court agrees with GM that evidence of punitive damages should be precluded until Barnes establishes that punitive damages are warranted. *See Genesys Cloud Servs., Inc. v. Talkdesk, Inc.*, No. 19-cv-695, 2023 WL 2354806, at *1 (S.D. Ind. Mar. 3, 2023) (granting plaintiff's motion to offer punitive damages evidence made on the third day of trial). The Motion is **granted**.

If and when Barnes believes he has offered sufficient evidence to establish his entitlement to punitive damages, he may move to offer punitive damages evidence, outside the presence of the jury, and the Court will determine whether such evidence is admissible at that time.

### 9. Settlement Offers or Negotiations

GM asks the Court to exclude any argument, questions, testimony, or evidence regarding settlement negotiations. Evidence of offers to compromise or statements made in settlement negotiations is expressly made inadmissible by Federal Rule of Evidence 408. The purpose of Rule 408 is to encourage settlements. Settlement negotiations may be chilled if parties feared their efforts would become evidence of liability at a later trial. *Kritikos v. Palmer Johnson, Inc.*, 821 F.2d 418, 423 (7th Cir. 1987). Thus, GM argues, the Court should prohibit any reference by any

of the parties or witnesses to settlement negotiations that have taken place in connection with this matter. This argument is well-taken and unopposed by Barnes, and the Motion is **granted**.

    10.    **"Golden Rule" Arguments**

GM asks the Court to enter an order excluding the so-called "golden rule" appeal, which asks the jurors to place themselves in the plaintiff's shoes. As the Seventh Circuit has explained, a "golden rule" appeal "is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)). This argument is also well-taken and is unopposed by Barnes. The Motion is **granted**.

    11.    **Failure to Call an Equally Available Witness or Probable Testimony**

GM lastly requests that the Court preclude Barnes from making "any comment, mention, or reference that GM has not called to testify any witnesses that are equally available to all parties" or speculate as to the testimony that witness might have given if called (Filing No. 83 at 10). Barnes argues that GM's request is premature because whether a witness is "equally available" is a fact-specific question, and neither the parties nor the Court yet knows which witnesses, if any, will be unavailable, the reason for their unavailability, or the probative value of their testimony (Filing No. 93 at 7). The Court agrees with Barnes that whether a witness is "equally available" depends on the specific circumstances of each witness, but Barnes offers no reason why the Court should not grant GM's request to exclude evidence regarding "witnesses that *are equally available* to all parties." (Filing No. 83 at 10 (emphasis added)); *see Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993) ("Before a party can argue to the trier of fact that an adverse inference should be drawn from another party's failure to call a witness, the complaining party must establish that the missing witness was peculiarly in the power of the other party to produce.").

11

Barnes does not address GM's request to preclude evidence regarding the potential testimony an equally unavailable witness may have given. The Court agrees with GM that any such evidence would constitute speculation and is therefore inadmissible.

GM's Motion is therefore **granted**. If Barnes intends to offer evidence about an absent witness who Barnes believes is *not* equally available to him, then Barnes may argue, outside the presence of the jury, that the witness is not equally available and that evidence regarding that witness is therefore admissible. *See* Seventh Circuit Federal Civil Jury Instructions § 1.19 (2017) ("The court has broad discretion in determining whether to give a missing witness instruction and in supervising closing arguments to ensure that counsel does not make reference to matters not in evidence." (citing *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 716–17 (7th Cir. 2004))

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** GM's Motion in *Limine* ([Filing No. 82](#)). An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED**.

Date:   5/12/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Jeffrey A. Macey
MACEY SWANSON LLP
jmacey@maceylaw.com

Bonnie L. Martin
OGLETREE DEAKINS
bonnie.martin@ogletree.com

Christina M. Kamelhair
OGLETREE DEAKINS
christina.kamelhair@ogletree.com