UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| EMMANUEL BARNES, | ) |
|   | ) |
| Plaintiff, | ) |
|   | ) |
| v. | ) Case No. 4:20-cv-00087-TWP-KMB |
|   | ) |
| GENERAL MOTORS LLC | ) |
|    f/k/a GENERAL MOTORS CO., | ) |
|   | ) |
| Defendant. | ) |

## ORDER *IN LIMINE*

This matter is before the Court on Defendant General Motors LLC's ("GM") objections to Exhibits 157, 159–65, 174, 175, 101–18, 120, 122, and 188,[1] which Plaintiff Emmanuel Barnes ("Barnes") intends to offer at trial (Filing No. 92). The parties presented oral argument on GM's objections at the May 15, 2023 Final Pretrial Conference and filed additional briefing on May 19, 2023 (Filing No. 97; Filing No. 98; Filing No. 99). For the following reasons, GM's objections are **sustained in part and overruled in part**.

### I.      LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until

---

[1] GM filed written objections to other exhibits Barnes intends to offer at trial (Filing No. 92). At the Final Pretrial Conference, the Court stated it would issue a written opinion on GM's objections to Exhibits 157, 159–65, 174, 175, 101–118, 120, 122, and 188, and that all remaining objections, including GM's objections to Exhibits 147 and 148, will be resolved at trial (Filing No. 97 at 3).

trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401. "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct. A motion in *limine* weeds out evidence that is not admissible for any purpose." *Washington Frontier League Baseball, LLC v. Zimmerman*, No. 14-cv-1862, 2018 WL 3120623, at *2 (S.D. Ind. June 26, 2018).

## II.   DISCUSSION

GM objects to three groups of exhibits: exhibits "Related to Plaintiff's Union" (Exs. 157, 159–65, 174, and 175); exhibits "Related to Plaintiff's Historical Medical Records" (Exs. 101–18, 120, and 122); and exhibits "Related to Communication Between Aubrey Courson and Jeremy Randolph (Ex. 188). The Court will address each objection in turn.

A.   **Exhibits Related to Barnes' Union (Exs. 157, 159–65, 174, and 175)**

GM first objects to Exhibits 157, 159–65, 174, and 175, which GM contends all relate solely to Barnes' pending union grievance and thus are irrelevant to his disability discrimination claim (Filing No. 99 at 2). GM also argues that these exhibits would cause unfair prejudice and could cause the jury to confuse Barnes' disability discrimination claim with his union grievances and might improperly imply that a violation of Barnes' collective bargaining agreement equals disability discrimination or a failure to accommodate. *Id.* at 2–3. Barnes responds that all of these exhibits are relevant to his disability discrimination claim and are therefore admissible. The Court largely agrees with Barnes.

1. **Exhibit 157**

Exhibit 157 is the Local Seniority Agreement between GM and Barnes' union (the "Seniority Agreement") (Filing No. 74). The Seniority Agreement outlines employees' transfer and placement rights based on seniority (Filing No. 98). Barnes contends that the Seniority Agreement is relevant to his disability discrimination claim because it pertains to the reasonableness of GM's purported accommodation. Barnes intends to argue that when GM unilaterally reassigned him from his crib attendant position to the Die Cast Department in September 2019, GM violated Barnes' rights under the Seniority Agreement, and that the job reassignment was therefore not a reasonable accommodation. *Id.* at 5. Seventh Circuit law is clear that an accommodation that violates an employee's seniority rights is not a "reasonable accommodation" for purposes of disability discrimination. *See, e.g.*, *Tate v. Dart*, 51 F.4th 789, 798 (7th Cir. 2022) ("Based on *US Airways*, we have said that 'it is unreasonable to assign an employee to a position as an accommodation if doing so would violate the employer's seniority system.'" (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 854 (7th Cir. 2015)) (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 394 (2002))).

The Court agrees with Barnes. The Seniority Agreement is relevant to GM's alleged violation of its seniority system, which is in turn relevant to whether GM's purported accommodation was reasonable. Though the Seniority Agreement may also be relevant to Barnes' union grievances, Barnes intends to offer the Seniority Agreement for purposes relevant to his disability discrimination claim. GM's objection to Exhibit 157 is **overruled**.

2. **Exhibits 159–65, 174**

Exhibits 159 and 160 are copies of Paragraph 64(d) from the 2015 and 1982 National Agreements, respectively, between GM and Barnes' union (Filing No. 74). Both National Agreements contain an identical Paragraph 64(d), which governs the loss of an employee's

seniority status and sets forth certain procedures related to loss of seniority. Paragraph 64(d) provides that "[s]eniority shall be broken" if:

> . . . the employee fails to return to work within five working days after being notified to report for work, and does not give a satisfactory reason. Such notice shall be clear in intent and purpose. A copy of Management's notification of such loss of seniority will be furnished promptly to the Chairperson of the Shop Committee.

Exhibit 161 is an undated letter from GM's Vice President, B.P. Crane, Jr., to GM's personnel directors regarding "Loss of Seniority – Notification" (Filing No. 74). The letter attaches several "sample letters," which Mr. Crane stated should be "used as models" to assist the personnel managers' compliance with Paragraphs 64(c), 64(d), and 111(b) of the National Agreement. The "sample letter" associated with Paragraph 64(d) states:

> In accordance with Paragraph (64)(d) of the GM-UAW National Agreement you are hereby instructed to report for work on (enter date). Failure to report for work in accordance with this notice within five (5) working days after delivery or attempted delivery of this notice or within five (5) working days beginning with the above specified date, whichever is later, may result in the loss of your seniority.
>
> In addition, you are advised to report to the Employment Office at (enter time) on (enter date[).] You will receive a physical examination and further information regarding your return to work at that time.

Exhibit 162 is a 1988 letter from a GM Assistant Supervisor to Barnes regarding Paragraph 64(c) of the National Agreement, and Exhibits 163, 164, and 165 are letters from Labor Relations Supervisor John Letner to Barnes, dated April 2003, August 2003, and March 2004, respectively, all containing language substantially similar to the "sample letter" in Exhibit 161. Exhibits 162 and 163 state:

> In accordance with paragraph (64d) of the GM-UAW National Agreement, you are hereby instructed to report for work [date] at your regular shift start time. Failure to report to work in accordance with this notice within five (5) working days after delivery or attempted delivery of this notice, whichever is first, may result in the loss of your seniority.

4

Exhibit 165 appears to contain identical language, except that it does not specify a date by which Barnes is instructed to return to work:

> In accordance with paragraph (64d) of the GM-UAW National Agreement, you are hereby instructed to report for work. Failure to report to work in accordance with this notice within five (5) working days after delivery or attempted delivery of this notice, whichever is first, may result in the loss of your seniority.

Exhibit 174 is a collection of sixteen letters from GM Labor Relations representatives to GM employees, containing the same Paragraph 64(d) language as Exhibit 165. The names of the recipients are redacted from Exhibit 174, and the dates of the letters vary. One letter is dated January 9, 2003, two of the letters are undated, and the remaining letters are dated between November 19, 2019, and August 12, 2020.

Barnes intends to offer the above exhibits to show that GM had a well-established practice of sending identical Paragraph 64(d) notices to its employees, including Barnes, but that GM deviated from that practice in terminating Barnes in September 2019. Exhibit 166, to which GM does not object, is a September 26, 2019 letter from GM Human Resources Representative Joyce Combs to Barnes, advising Barnes that his seniority has been broken pursuant Paragraph 64(d). The language in Exhibit 166 varies from the above language. Exhibit 166 states only:

> You are hereby notified that your seniority has been broken effective September 13, 2019 pursuant to the provisions of Paragraph 64(d) of the GM-UAW National Agreement.

Barnes is correct that "[s]ignficant, unexplained, or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of discriminatory intent." *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012). For that reason, the exhibits pertaining to GM's Paragraph 64(d) notices are relevant to Barnes' disability discrimination claim and are not, as GM contends, irrelevant because they relate solely to Barnes' pending union grievances.

However, the Court concludes that some of these exhibits should be excluded. Exhibit 161, the letter from Mr. Crane containing "sample" letters, is undated, so the Court cannot determine whether it is relevant to the established procedure identified by Barnes. Pages 3 and 4 of Exhibit 174 (marked PLTF0408 and 0409) are likewise undated. And Exhibit 162, the 1988 letter to Barnes, relates to Paragraph 64(c) of the National Agreement, not Paragraph 64(d).

GM's objections are **sustained** as to Exhibit 161, Exhibit 162, and pages 3–4 of Exhibit 174. GM's objections are **overruled** as to Exhibits 159–60, 163–65, and the remaining pages of 174. If GM believes these exhibits are inadmissible for another purpose, then GM may raise those arguments at trial, outside the presence of the jury.

### 3. Exhibit 175

Exhibit 175 are copies of the union grievances Barnes filed protesting his job reassignment and termination (Filing No. 74; Filing No. 98 at 10). Barnes contends his grievances are relevant for two reasons. First, Barnes argues the grievances support his claim that his job reassignment violated his seniority rights and was not a reasonable accommodation (Filing No. 98 at 10). However, the mere fact that Barnes filed union grievances does not support the merits of his disability discrimination claim. Second, Barnes argues that the grievances "provided an avenue" for Barnes to return to his original job assignment, "and the jury could conclude that Defendant discriminatorily terminated Plaintiff in order to assure that he would not return" to his original assignment. *Id.* Barnes' sworn testimony can confirm that he filed grievances and that those grievances could have resulted in him returning to his original job assignment. The grievances themselves only confirm that Barnes filed the grievances and therefore have little probative value.

The risk of unfair prejudice and jury confusion substantially outweighs the probative value of Exhibit 175. The grievances contain hearsay statements from Barnes regarding GM's alleged discrimination and contain references to Barnes' claim for back pay, which the Court has already

determined is inadmissible (Filing No. 95 at 9). Even with a limiting instruction, there is a risk that the jury will consider the truth of the matters asserted in Barnes' grievances, which would unfairly prejudice GM. Additionally, the jury may confuse the issues presented in Barnes' grievances with the issues they must resolve at trial. These risks substantially outweigh the very limited probative value of Exhibit 175. GM's objection to Exhibit 175 is **sustained**.

**B.      Exhibits Related to Barnes' Historical Medical Records (Exs. 101–18, 120, and 122)**

GM next objects to Exhibits 101–18, 120, and 122, which relate to Barnes' medical history, dating back to 2004. GM argues that these historical medical records are "so far removed from the time period relevant to this litigation" that they are not relevant (Filing No. 99 at 3). GM also argues that these records are irrelevant to Barnes' present discrimination claim because Barnes' medical restrictions and his position with GM changed between 2004 and 2019. *Id.* at 4. Further, GM argues that even if the records were relevant, they would cause jury confusion and waste trial time. *Id.*

Barnes responds that these medical records recount the origin and progression of the impairment that allegedly led to his termination, so they are relevant to proving Barnes had a "disability" under the Americans with Disabilities Act Amendments Act ("ADAAA") 42 U.S.C. § 12102(1). The Court agrees with Barnes. Because the impairment Barnes developed in 2004 is the same impairment at issue in his disability discrimination claim, Barnes' medical records from 2004 and 2005 are highly relevant in proving whether Barnes had a "disability". Barnes' medical records between 2004 and 2019 regarding his alleged impairment also are relevant to proving whether Barnes had a "record of such an impairment" and/or whether Barnes was "regarded as having such an impairment" by GM. *Id.* Regardless of the time between the 2004 injury and 2019 termination, and regardless of the intervening job assignments and work restrictions, Barnes' injury

in 2004 and his termination in 2019 are directly connected, and his historical medical records are therefore relevant.

Additionally, the Court does not find that the risk of jury confusion or time constraints warrants exclusion of this evidence, especially considering its high probative value. Because the issue of Barnes' "disability" is one of the most important issues in this case, time spent presenting evidence on that issue will not be time wasted. And any risk of jury confusion could be alleviated with limiting instructions regarding the purpose for which the jury should consider the medical records.

GM's objections to Exhibits 101–18, 120, and 122 are **overruled**. If, in the context of trial, GM believes this evidence becomes cumulative or otherwise inadmissible, GM may raise those arguments at that time, outside the presence of the jury.

C.    **Communication Between Audrey Courson and Jeremy Randolph (Ex. 188)**

Exhibit 188 is a July 29, 2021 email from Audrey Courson, a supervisor in GM's Materials Department where the crib attendants work, and Jeremy Randolph, a union Committeeman who represents employees in the materials department. Mr. Randolph's email states that he and Ms. Courson had spoken about "moving a person to 3rd[] [shift] and maybe 2nd shift to help level out the shifts in the crib," and asked if Ms. Courson knew whether she had decided to move someone to third shift. Ms. Courson responded:

> Yes I brought it up to both Todd Smith, and Todd Harhay. Due to the lawsuit which is going on right now I can't have one. They acted like once that is over I could though. . . . I definitely need someone Danny has been on his own for far to [sic] long.

GM objects to this exhibit on the grounds of hearsay, relevance, and lack of personal knowledge. The Court will address each objection in turn.

GM contends that Ms. Courson's email is hearsay, and that Todd Smith and Todd Harhay's statements contained in the email are hearsay within hearsay. As Barnes points out, though, Courson, Smith, and Harhay are all GM representatives who made those statements in that representative capacity. The statements are therefore all statements of an opposing party offered against an opposing party and are thus not hearsay. Fed. R. Evid. 801(d)(2).

Next, GM argues Ms. Courson's statements are irrelevant to this litigation because they were made two years after Barnes' termination (Filing No. 99 at 4). In response, Barnes argues that the statements are relevant because they tend to show that GM's purported reason for moving Barnes from third shift to first shift, which required more forklift driving, is pretextual. As described in GM's EEOC Position Paper and its motion for summary judgment, GM moved Barnes because third shift no longer needed a second attendant, first shift needed another attendant, and Barnes had less seniority than the other third-shift attendant. According to Barnes, Ms. Courson's email tends to show that GM did—and still does—require a second third-shift attendant, so GM's reason for moving Barnes was therefore pretextual (Filing No. 98 at 11–12). The Court agrees with Barnes that Ms. Courson's email is relevant to his discrimination claim.

Lastly, GM argues that Exhibit 188 is not admissible because Ms. Courson has no personal knowledge of the events surrounding Barnes' termination in 2019 (Filing No. 99 at 4). While that may be true, Barnes intends to offer the email to show that GM presently needs a second third-shift crib attendant but is declining to fill that position for the remainder of this lawsuit to maintain GM's pretext for removing Barnes from third shift. As the supervisor of the Material Department who oversees the crib attendants, Courson would have personal knowledge of GM's present need for a second-third shift attendant, and as the person who spoke with Smith and Harhay about third shift staffing, she would have personal knowledge of what they said to her.

GM's objection to Exhibit 188 is **overruled**.

### III. CONCLUSION

For the foregoing reasons, GM's objections are **SUSTAINED in part and OVERRULED in part**. GM's objections are **sustained** as to Exhibits 161, 162, 174 (pages 3–4), and 175. GM's objections are **overruled** as to Exhibits 101–18, 120, 122, 157, 159–60, 163–65, 174 (pages 1–2 and 5–16), and 188. GM's remaining objections to Barnes' exhibits will be resolved at trial.

An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED**.

Date:   5/25/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Jeffrey A. Macey
MACEY SWANSON LLP
jmacey@maceylaw.com

Bonnie L. Martin
OGLETREE DEAKINS
bonnie.martin@ogletree.com

Christina M. Kamelhair
OGLETREE DEAKINS
christina.kamelhair@ogletree.com